UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNMATCH, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NXTBIGTHING, LLC, et al.,<br><br>　　　　Defendants. | Case No. 14-cv-05438-JST<br><br>**ORDER REGARDING MOTIONS IN LIMINE**<br><br>Re: ECF Nos. 90, 97 |

Before the Court are Defendants Nxtbigthing, LLC and Chad Batterman's motions in limine (1) to exclude files produced by Homesite Insurance Company and (2) to exclude the expert testimony of Joseph A. Greco, P.E.. ECF Nos. 90, 97. For the reasons set forth below, the Court will deny both motions.

**I.    Background**

This is a trademark infringement case. The parties are familiar with the facts. The Court recited the history of this litigation in a prior order, ECF No. 114, and will not repeat it here.

The present motions relate to Plaintiff InternMatch, Inc.'s earlier motion for terminating sanctions for spoliation of evidence. ECF No. 63. In that motion, InternMatch accused Defendants of intentionally destroying the electronic versions of the "evidence of use" documents demonstrating Defendants' alleged use of the disputed trademark. As part of its motion, InternMatch included files produced by Defendant Chad Batterman's insurer, Homesite Insurance Company, and an expert report from Joseph A. Greco, P.E. After considering the parties' briefs and arguments, the Court found that Defendants spoliated evidence and determined that the spoliation warranted an adverse jury inference against Defendants. See ECF No. 114.

On January 8, 2016, Defendants filed a motion in limine seeking to exclude the files

1  produced by Homesite Insurance Company. On January 14, 2016, Defendants filed a second
2  motion in limine seeking to exclude Greco's testimony.

3  **II.      Motion at ECF No. 90 Regarding Files Produced Pursuant to the Homesite Subpoena**

4       On August 26, 2016, InternMatch deposed Defendant Chad Batterman. He testified that a
5  power surge destroyed his electronic devices and the relevant evidence of use documents stored on
6  the devices. See ECF No. 64-1, Keyes Decl., Ex. 1, Batterman Tr. 18:13–25, 112:14–23.
7  Batterman submitted an insurance claim regarding loss of the electronic devices with Homesite
8  Insurance Company. See id. 16:19–23, 18:6–19, 20:19–25. On day three of Batterman's
9  deposition, counsel for InternMatch informed Batterman that InternMatch intended to issue a
10 subpoena to his insurance company. ECF No. 64-4, Keyes Decl. Ex. 4, Batterman Tr. 241:8–
11 242:24.

12      On September 25, 2016, InternMatch provided Defendants notice of the subpoena. ECF
13 No. 92-1, Chevalier Decl., Ex. A. On September 29, 2015, InternMatch served the subpoena on
14 Homesite. ECF No. 79-2. Neither Homesite nor Defendants moved to quash the subpoena. Id. ¶
15 13; ECF No. 92-1, Ex. D. On October 14, 2015, InternMatch received the documents responsive
16 to the subpoena. ECF No. 64, Keyes Decl. ¶ 10.

17      Three months after InternMatch served its subpoena and received Homesite's responsive
18 document production, Defendants filed this motion in limine to exclude Homesite's files. ECF
19 No. 90.

20      **A.      Legal Standard**

21      The primary method for requesting that a non-party produce documents is by subpoena
22 under Federal Rule of Civil Procedure 45. Generally, "requests for production of documents and
23 things under Rule 45 constitute pre-trial discovery and must be served within the designated
24 discovery period." nSight, Inc. v. PeopleSoft, Inc., No. 3:04CV3836MMC(MEJ), 2006 WL
25 988807, at *2–3 (N.D. Cal. Apr. 13, 2006) (citing Integra Lifesciences I, Ltd. v. Merck KGaA,
26 190 F.R.D. 556, 561–62 (S.D. Cal. 1999)); see also MedImmune, LLC v. PDL Biopharma, Inc.,
27 No. C08-05590 JF HRL, 2010 WL 1266770, at *1 (N.D. Cal. Apr. 1, 2010). Some courts have
28 found that Rule 45 subpoenas sought after the discovery cut-off are improper attempts to obtain

United States District Court
Northern District of California

2

discovery beyond the discovery period. See, e.g., Rice v. United States, 164 F.R.D. 556, 557–59 (N.D. Okla. 1995) (quashing subpoenas duces tecum issued to third parties after close of discovery because they were an improper attempt to engage in discovery after discovery cut-off); see also F.T.C. v. Netscape Commc'ns Corp., 196 F.R.D. 559, 560–61 (N.D. Cal. 2000).

Subpoenas must issue from the court where the action is pending. Fed. R. Civ. P. 45(a)(2). An attorney authorized to practice in the issuing court may issue and sign a subpoena. Fed. R. Civ. P. 45(a)(3). Rule 45 authorizes nationwide service of a subpoena. Johnson v. Bay Area Rapid Transit Dist., No. C-09-0901 EMC, 2014 WL 2514542, at *2 (N.D. Cal. June 4, 2014).

### B. Discussion

Nxtbigthing and Batterman seek to exclude insurance company documents produced by Homesite Insurance Company. ECF No. 90. Defendants argue that exclusion is warranted because: (1) the subpoena was not timely served; (2) the subpoena was issued from the wrong court by an attorney not licensed to practice before the issuing court, and (3) Homesite should not have disclosed the file based on application of Pennsylvania's privacy laws. ECF No. 90 at 6.

Defendants first argue that the subpoena was served after the discovery cut-off date in this action and that the documents were also produced after the discovery cut-off date. Id. at 7. The Court disposes of this argument because InternMatch timely served the subpoena before the fact discovery cut-off date. The Court set fact discovery cut-off for September 30, 2015, ECF No. 45, and InternMatch served the subpoena on September 29, 2015, ECF No. 79-2. See MedImmune, LLC, 2010 WL 1266770, at *1 ("[W]ith certain exceptions not present here, Fed. R. Civ. P. 45 subpoenas constitute pretrial discovery that *must be served* within the specified discovery period.").

Defendants next argue that the subpoena was facially deficient because the subpoena was issued by the wrong court and by an improper person. Rule 45(a)(2) requires that the subpoena issue from the Northern District of California, but the subpoena issued from the District of Massachusetts. See ECF No. 79-1, Ex. 1. Defendants further point out that, Lynnda McGlinn, counsel for InternMatch, issued the subpoena but is not admitted to practice in the District of Massachusetts. See ECF No. 92-1, Ex. B. InternMatch concedes that the subpoena was

3

1  "inadvertently issued out of the U.S. District Court for the District of Massachusetts," but argues

2  that Defendants should have moved to quash the subpoena. ECF No. 105 at 6 n.4.

3        The Court agrees. Defendants had the opportunity to object to the subpoena by filing a

4  motion to quash before the date of production of the requested documents. Defendants explain it

5  would have been cost-intensive to seek separate, local counsel in Massachusetts and that in an

6  "analogous circumstance," AT&T rejected a subpoena served by InterMatch. ECF No. 90 at 8–9.

7  However, "[a] party objecting to a subpoena must file a motion to quash the subpoena before . . .

8  the actual date of production of the requested documents, as is required by the Federal Rules."

9  Moore v. Chase, Inc., No. 1:14-CV-01178-SKO, 2015 WL 4393031, at *6 (E.D. Cal. July 17,

10  2015). The subpoena identified October 12, 2015 as the production date. ECF No. 79-2, Ex. 1.

11  That date passed without a motion to quash from Defendants, and they "cannot now attack the

12  subpoena's validity" through this motion in limine. Moore, 2015 WL 4393031, at *6; see also

13  Anderson v. Abercrombie & Fitch Stores, Inc., No. 06CV991-WQH(BLM), 2007 WL 1994059, at

14  *8 (S.D. Cal. July 2, 2007). That AT&T might have declined to comply with an unrelated

15  subpoena is irrelevant.

16        Finally, Defendants argue that Pennsylvania privacy laws should protect against disclosure

17  of Batterman's electronically stored information. Title 18 of Pennsylvania Consolidated Statutes

18  Section 5742 requires that "A person or entity providing an electronic communication service to

19  the public shall not knowingly divulge to any person or entity the contents of a communication

20  while in electronic storage by that service . . . ." Defendants argue that Homesite did not consider

21  this Pennsylvania law when disclosing the "copies of electronic communications made between

22  itself and Batterman." ECF No. 90 at 8.

23        As an initial matter, the Court notes that Defendants waived this argument by failing to

24  move to quash the subpoena. Moreover, Defendants have not established that Homesite qualifies

25  as an entity that provides an electronic communication service. Although Homesite

26  communicated with Batterman through email and kept copies of their electronic communications,

27

28

United States District Court
Northern District of California

it did not provide an electronic communication service.[1]  Instead, Homesite "is more appropriately characterized as a provider of [insurance] and a *consumer* of electronic communication services." In re Jetblue Airways Corp. Privacy Litig., 379 F. Supp. 2d 299, 307 (E.D.N.Y. 2005) (emphasis added) (finding that an airline carrier's online reservation system was not an "electronic communication service" within the meaning of the federal Electronic Communications Privacy Act); see also Crowley v. CyberSource Corp., 166 F. Supp. 2d 1263, 1270 (N.D. Cal. 2001) (rejecting the argument that because Amazon, the online merchant, received e-mails from the plaintiff, it provided an electronic communication service).

The Court, accordingly, denies the motion to exclude the Homesite Insurance Company files.

### III. Motion at ECF No. 97 Regarding Joseph Greco

As part of InternMatch's motion seeking a terminating sanction, it also included an expert report from Joseph A. Greco, a licensed professional engineer.  See ECF No. 70-1.  InternMatch used Greco's report to support its contention that Batterman fabricated the power surge.  See ECF No. 64 at 15–16.  Greco's report stated that power surges are rare events and that no abnormal electrical activity occurred in Philadelphia on the day of the power surge.  ECF No. 70-1, Ex. A at 5–6.  Greco concluded:

> Based on the results of my investigation and within a reasonable degree of engineering and scientific certainty, I have concluded, due to the total lack of supporting evidence to the contrary, there was no power transient or surge that damaged or destroyed computers, associated electronic equipment and electrical receptacles at the loss location on the dates reported.

Id. at 7.

The Court did not rely on Greco's expert report in finding that Batterman fabricated the power surge and spoliated evidence.  See ECF No. 114 at 13.  However, the Court will consider the motion in light of the possibility that InternMatch may seek to introduce Greco's report at trial.

---

[1] Defendants assert that AT&T applied section 5742 and rejected the subpoena. ECF No. 90 at 6. The Court notes that AT&T, unlike Homesite, appears to provide an electronic communication service because it offers Batterman the means and ability to communicate electronically.

### A. Legal Standard

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Trial courts serve a "gatekeeping" role "to ensure the reliability and relevancy of expert testimony." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999) (citing Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993)). They should screen "unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." City of Pomona v. SQM North America Corp., 750 F.3d 1036, 1044 (9th Cir. 2014). The reliability test under Rule 702 and Daubert "is not the correctness of the expert's conclusions but the soundness of his methodology." Id. "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." Primiano v. Cook, 598 F.3d 558, 564 (9th Cir. 2010). The proponent of the expert testimony has the burden of proving admissibility. Lust By & Through Lust v. Merrell Dow Pharms., Inc., 89 F.3d 594, 598 (9th Cir. 1996).

### B. Discussion

Defendants do not attack Greco's qualifications, but instead, contend that Greco's testimony is unreliable. ECF No. 97 at 4. InternMatch responds that Defendants' basis for attack goes to the weight of Greco's report and not to its admissibility. ECF No. 107 at 9.

In order to form the conclusion that no power surge occurred, Greco first noted that there are two sources of power surges: severe weather conditions and physical disruptions to utility poles. ECF No. 70-1 at 5–6. He then found that there were no records of severe weather occurrences and no reports of such disturbances. Id. Next, Greco explained that given the configuration of the residential electrical power distribution panel, a scenario where only four or

five electrical receptacles are affected is "highly unlikely." Id. at 6–7. Finally, Greco highlighted that Batterman testified that he had no supporting documentation to certify that an electrician saw evidence of a power surge or replaced receptacles and that he did not retain the destroyed devices. Id. at 7.

The primary thrust of Defendants' argument is that Greco's report must be excluded because it is not sufficiently reliable, but this argument is based entirely on Greco's not having considered certain materials that Defendants' expert, Dr. Tobias, did consider. These arguments go to the weight, not the admissibility, of Greco's testimony. A jury can decide how much weight it deserves. See, e.g., Bergen v. F/V St. Patrick, 816 F.2d 1345, 1352 n.5 (9th Cir. 1987) opinion modified on reh'g, 866 F.2d 318 (9th Cir. 1989) ("The relative weakness or strength of the factual underpinnings of the expert's opinion goes to weight and credibility, rather than admissibility."); In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices and Prods. Liab. Litig., No., MDL 10–02172, 2012 WL 4904412, at *3 (C.D. Cal. Sept. 20, 2012) (finding whether an expert's reasonable assumptions are true and whether his opinions should be accepted are issues going to the weight of his testimony and report and not to their admissibility). At bottom, Defendants' gripe with Dr. Greco's report is that they disagree with his conclusions. This is not a basis for exclusion under Daubert. See, e.g., Kennedy v. Collagen Corp., 161 F.3d 1226, 1230 (9th Cir. 1998) ("[j]udges in jury trials should not exclude expert testimony simply because they disagree with the conclusions of the expert"); Apple, Inc. v. Samsung Elecs. Co., No. 11-CV-01846-LHK, 2012 WL 2571332, at *8 (N.D. Cal. June 30, 2012) (one party's disagreement with opposing party's expert's conclusions not a basis for exclusion under Daubert).

Defendants also take issue with Greco's testimony because it "failed to consider the report of the only electrician who actually physically performed work at the site."[2] ECF No. 97 at 5. As the Court made plain in its prior order, a reasonable jury could conclude that no work was ever performed, and that reports of its having been performed were fabricated. ECF No. 114 at 13–15. For the same reasons, the jury might decide to disregard the report of the man who allegedly

---

[2] Notably, this report was never disclosed to InternMatch during discovery and only later appeared as an exhibit in Defendants' expert rebuttal. ECF No. 78, Keyes Decl. ¶ 6

performed the work. It cannot be the grounds for exclusion that Greco did not consider the report.

In sum, there is no basis to exclude Greco's testimony. Whatever shortcomings there might be in that testimony can be open to "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." Daubert, 509 U.S. at 596. Accordingly, the Court denies Defendants' motion to exclude the testimony of Joseph A. Greco, P.E.

## CONCLUSION

The Court denies the motion to exclude the Homesite Insurance Company files and the motion to exclude Joseph Greco's testimony.

IT IS SO ORDERED.

Dated: March 28, 2016

_____
JON S. TIGAR
United States District Judge