UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNMATCH, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>NXTBIGTHING, LLC, et al.,<br><br>    Defendants. | Case No. 14-cv-05438-JST<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING MOTION FOR CLARIFICATION**<br><br>Re: ECF No. 122, 157 |

In this trademark dispute, Plaintiff InternMatch, Inc. alleges that Defendants Nxtbigthing, LLC and Chad Batterman wrongly obtained registration of the trademark INTERNMATCH. ECF No. 1. Plaintiff seeks cancellation of the mark. Id. Presently before the Court is Plaintiff's Motion for Partial Summary Judgment. Plaintiff requests that the Court grant partial summary judgment against Defendants on Plaintiff's claims for (1) declaratory judgment that Plaintiff has superior rights to Defendants in the INTERNMATCH trademark; (2) cancellation of Registration No. 4,641,911 ("the '911 Registration"); (3) false designation of origin; and (4) unfair competition. Plaintiff also seeks a permanent injunction and an award of attorneys' fees and costs incurred in the litigation. The Court will grant Plaintiff's motion for partial summary judgment and enjoin Defendants from using the INTERNMATCH mark, but will not award attorneys' fees.

**I.     BACKGROUND**

    **A.     Undisputed Facts**

Founded in 2009, Plaintiff provides an online platform that connects individuals seeking internships with employers seeking interns. ECF No. 124, Maguire Decl. ¶ 2. Plaintiff offers these resources and tools under the service mark INTERNMATCH. Id. Individuals use InternMatch to search for internships and utilize its tools, such as resume creation. Id. ¶ 3. Plaintiff offers its services online and through social media. Its website (www.internmatch.com)

has been maintained since at least October 31, 2009.  Id. ¶ 4.  Plaintiff uses the INTERNMATCH mark to advertise and promote its services on social media, including LinkedIn, Instagram, Google+, and Twitter.  Id. ¶ 9.

Since its founding, InterMatch has invested time, money, and resources to grow its business and develop goodwill associated with the INTERNMATCH mark.  Id. ¶ 5.  Plaintiff spent the following amounts annually in advertising from 2009–2015: $8,178 (2009); $5,012 (2010); $18,715 (2011); $53,634 (2012); $100,704 (2013); $127,770 (2014); and $66,701 (2015). Id.  In 2009, 100 interns and 85 employers used Plaintiff's services, id. ¶ 6; today, Plaintiff has 1.56 million registered interns, and 39,645 employers have used its services.  Id.  180 colleges and universities link to Plaintiff's website, and a number of third party news articles have covered Plaintiff's services.  Id. ¶¶ 7–8.

In 2009, Plaintiff began a trademark application with the U.S. Patent and Trademark Office ("USPTO"), but abandoned the application by July 7, 2010.  Id. ¶ 10.  Plaintiff filed a new trademark application on January 6, 2014, but the application was suspended because of a pending application for the same mark filed by defendant Nxtbigthing.  Id. ¶ 11.

Nxtbigthing is a limited liability company owned by Chad Batterman.  ECF No. 32 at 8 ¶ 2.  Batterman formed Nxtbigthing in 2012.  Id. at 9 ¶ 9.  On March 27, 2013, Nxtbigthing filed an intent-to-use trademark application for INTERNMATCH, and the application issued on November 18, 2014.  ECF No. 1 ¶ 22; ECF No. 32 ¶ 22.  Nxtbigthing states that the trademark was first used in commerce on February 15, 2007.  ECF No. 1 ¶ 23.

In January of 2014, Plaintiff sent Batterman a letter, informing him of InternMatch's "prior rights in the INTERNMATCH trademark."  ECF No. 124, Maguire Decl. ¶ 11.  Batterman responded by offering to settle the INTERNMATCH matter for $325,000.  Id.  Batterman also provided documents to Plaintiff, demonstrating use of the INTERNMATCH trademark as early as 2007.  Id.  The documents included marketing flyers and an activity log.  See ECF No. 1-3, Ex. C. Plaintiff did not believe the documents were genuine.  ECF No. 124, Maguire Decl. ¶ 11.  Plaintiff did not accept Batterman's offer to sell his rights in the trademark.  ECF No. 124, Maguire Decl. ¶ 11.

Batterman began to send trademark claim notices to various social networking services used by Plaintiff. Id. ¶ 12. These notices "were very disruptive to InternMatch's ongoing operations and continued promotion of its brand and goodwill," so Plaintiff filed this lawsuit. Id.

During discovery, Defendants did not produce any evidence showing Defendants' commercial use of the INTERNMATCH mark. ECF No. 88-1, ECF No. 64-1, Keyes Decl., Ex. 1, Batterman Tr. 62:12–23. In fact, the evidence showed that Defendants have never received any revenue from use of the mark. Id.

### B.  Procedural History and the Court's Spoliation Order

Plaintiff filed its Complaint on December 12, 2014. See ECF No. 1. Plaintiff alleges five causes of action: (1) false designation of origin; (2) cancellation for fraud on the USPTO; (3) cancellation for lack of use in commerce; (4) declaratory judgment that InternMatch has superior rights to Nxtbigthing and Chad Batterman in the INTERNMATCH trademark; and (5) unfair competition under California Business and Professions Code section 17200. Id. Plaintiff contends that "Nxtbigthing and Mr. Batterman currently hold or control various trademark registrations and/or trademark applications that have been or are being prosecuted through the use of false specimens of use at the USPTO." Id. ¶ 39. Central to Plaintiff's claims is the determination of whether InternMatch or Nxtbigthing has priority in the INTERNMATCH trademark and whether Batterman created and provided genuine evidence of use documents. ECF No. 63 at 11.

Defendants Nxtbigthing and Chad Batterman answered the Complaint on February 25, 2015. See ECF Nos. 31, 32. Nxtbigthing also filed counterclaims alleging (1) trademark infringement, (2) unfair competition under the Lanham Act; and (3) unfair competition under California Business and Professions Code section 17200. See ECF No. 32. Defendants' Answer asserts "[f]rom 2007 through current day, Mr. Batterman and Nxtbigthing have continuously and extensively used the mark INTERNMATCH® in interstate commerce." ECF No. 32 ¶ 14.

On May 6, 2015, the parties submitted a joint case management statement and identified the principal factual issues in dispute:

> Whether the evidence of commercial use of the INTERNMATCH

> trademark by Defendants are [sic] genuine and whether statements made by Defendants in order to procure its INTERNMATCH trademark registration are fraudulent, such that Defendants do not own any rights to the trademark INTERNMATCH. Additionally, the parties dispute whether Plaintiff is an infringer of the INTERNMATCH trademark.

ECF No. 49 at 3. The parties' joint case management statement also stated that the parties' had taken reasonable steps "to preserve evidence relevant to the issues reasonably evidence in this action." Id. at 4.

During the discovery phase, Plaintiff sought copies, including electronic copies, of documents that would support Nxtbigthing and Batterman's assertions that they have used the INTERNMATCH mark continuously and extensively. In response to Plaintiff's requests for production, Defendants informed Plaintiff that electronic copies of potentially responsive documents "were irretrievably lost in August 2011 due to a lightning strike, and in April 2015 due to a power surge." See ECF No. 65-1, Keyes Decl., Ex. 7.

Batterman testified as follows at his deposition: Nxtbigthing created a database in 2007 or 2008 that permitted users to search for job postings. ECF No. 64-1, Keyes Decl., Ex. 1, Batterman Tr. 62:12–23. The database was maintained on hard drives. See id. at 62:24–64:10. Two separate lightning strikes hit Batterman's office in August and September or October of 2011. Id. at 75:1–14. As a result of the August 2011 lightning strike, the data on the hard drives were not recoverable. Id. Batterman purchased a replacement iMac desktop computer in August or September of 2011. Id. at 96:14–22. Batterman transferred documents evidencing his use of the INTERNMATCH mark to the desktop computer through a backup jump drive on which Batterman had stored past marketing and advertising materials and financial information. Id. at 130:16–132:7. He was able to reconstruct a new database because many of the job postings existed in paper form. Id. at 77:17–78:3. Batterman explained that a power surge destroyed the iMac desktop computer and other electronic devices on April 2, 2015, while this litigation was pending. Sometime between April 5, 2015 and April 12, 2015, various electronic devices, including the iMac desktop computer that contained corporate records and marketing material central to the parties' dispute, were discarded. Defendants did not run diagnostics on the iMac desktop computer to see if the files on the hard drive could be recovered prior to discarding it.

1  ECF No. 64-1, Keyes Decl., Ex. 1, Batterman Tr. 19:9–18, 20:5–25.  The desktop computer

2  contained the only electronic copies of Nxbigthing's marketing materials that allegedly established

3  prior use.  Id. at 19:11–21:8.

4  Neither Plaintiff nor, ultimately, the Court believed Batterman's version of events.  On

5  November 12, 2015, Plaintiff filed a motion for terminating sanctions, accusing Defendants of

6  intentionally destroying the electronic versions of the evidence of use documents.  ECF No. 63.

7  On February 8, 2016, the Court granted the motion in part, finding that Defendants wilfully failed

8  to preserve relevant evidence of use documents that they had a duty to preserve.  ECF No. 114 at

9  22.  The Court found that terminating sanctions were too severe, but held that Plaintiff was

10  entitled to an adverse inference jury instruction.  Id. at 21–22.  The Court also precluded

11  Defendants from offering testimony or argument that the destroyed evidence, or any versions of it

12  in hard copy or otherwise, supported Defendants' assertions that they had priority in the

13  trademark.  Id. at 23.   The Court also awarded monetary sanctions.  Id. at 23; ECF No. 140

14  (granting Plaintiff's application for $69,322.45 in attorneys' fees and costs).

15  On December 25, 2015, Nxtbigthing filed a motion to dismiss its counterclaim.  ECF No.

16  83.  On February 11, 2016, the Court granted the motion.

17  On March 24, 2016, Plaintiff filed this motion for partial summary judgment.  ECF No.

18  122.  On March 7, 2016, Defendants filed a response.  On April 14, 2016, Plaintiff filed a reply.

19  **II.    SUMMARY JUDGMENT**

20  **A.    Legal Standard**

21  Summary judgment is appropriate where the pleadings, depositions, answers to

22  interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no

23  genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

24  Fed. R. Civ. P. 56(a).  A party seeking summary judgment bears the initial burden of informing

25  the court of the basis for its motion and of identifying those portions of the pleadings and

26  discovery responses that demonstrate the absence of a genuine issue of material fact.  See Celotex

27  Corp. v. Catrett, 477 U.S. 317, 323 (1986).  All reasonable inferences from the evidence must be

28  drawn in favor of the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242

(1986). Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." Id. at 248. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### B. Discussion

Plaintiff moves for summary judgment on four of its five claims, arguing that the undisputed evidence shows that InternMatch is the senior user of the INTERNMATCH mark. See ECF No. 122. The Court addresses the claims in turn.

#### 1. Priority in the INTERNMATCH Mark

In trademark law, "the standard test of ownership is priority of use." Rearden LLC v. Rearden Commerce, Inc., 683 F.3d 1190, 1203 (9th Cir. 2012) (quoting Sengoku Works Ltd. v. RMC Int'l, Ltd., 96 F.3d 1217, 1219 (9th Cir. 1996)). "To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." Id. "[A] mark shall be deemed to be in use in commerce . . . on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce . . . ." 15 U.S.C. § 1127.

Federal registration of the mark provides prima facie evidence that the registrant is the owner of the mark. Sengoku Works Ltd., 97 F.3d at 1219 (citing 15 U.S.C. §1057(b); 15 U.S.C. § 1115(a)). "Therefore, the registrant is granted a presumption of ownership, dating to the filing date of the application for federal registration, and the challenger must overcome this presumption by a preponderance of the evidence." Id. at 1219–20. A non-registrant rebuts this presumption by showing that she used the mark in commerce first, thereby invalidating the registration. Id. at 1220. "To prevail over a junior user who is an incontestible registrant, a common law senior user

must show continuous use prior to the date of the junior user's trademark registration." Credit One Corp. v. Credit One Fin., Inc., 661 F. Supp. 2d 1134, 1138 (C.D. Cal. 2009). "To be a continuing use, the use must be maintained without interruption." Casual Corner Assoc., Inc. v. Casual Stores of Nevada, Inc., 493 F.2d 709, 712 (9th Cir. 1974).

Plaintiff argues that it is the senior user of the INTERNMATCH mark and has established priority as a matter of law. ECF No. 122 at 19. Plaintiff has put forward evidence showing that it has continuously marketed its services to job seekers and employers using the INTERNMATCH mark since at least October 31, 2009. See ECF No. 124, Maguire Decl., Exs. 1–2. By 2011, Plaintiff expanded its services nationwide. Id. ¶ 6. Millions of job seekers and thousands of employers now use Plaintiff's services. Id. Plaintiff has also submitted a number of third party news articles as evidence of the public's recognition of the INTERNMATCH mark. ECF No. 125, Maguire Decl., Ex. 6. Plaintiff argues that Nxtbigthing, by contrast, has no admissible evidence of bona fide use in commerce pre-dating InternMatch's use of the mark. ECF No. 122 at 19.

Defendants argue that testimony from three nonparties who assisted Batterman with handing out marketing materials "raise enough of a factual question in the mind of the finder of fact" that Defendants' use of the mark predated Plaintiff's use of the mark. ECF No. 135 at 4–5. Specifically, Defendants offer the testimony of Silvia Santo, Batterman's wife; Stephen Crooks, the electrician in Batterman's spoliation of evidence; and Jason Boyer, a friend of Batterman. They testified that they passed out marketing flyers promoting Defendants' business before 2009.

The Court cannot consider this evidence, however, because Defendants are precluded from offering it. These marketing fliers are part of the evidence of use documents, of which Defendants destroyed the electronic versions. As an evidentiary sanction for Defendants' spoliation, the Court precluded Defendants from offering testimony regarding the spoliated documentary evidence. As the Court held: "Defendants are *precluded from offering argument and testimony that the destroyed evidence, or any versions of it in hard copy or otherwise*, supports Defendants' assertions that they have priority to the trademark." ECF No. 114 at 23 (emphasis added). Permitting Defendants to argue or testify about the destroyed evidence would unfairly prejudice

7

1  Plaintiff.  Id.  As the testimony from Santo, Crooks, and Boyer relates to hard copies of the
2  destroyed evidence, Defendants are precluded from offering it as evidence of their priority in the
3  INTERNMATCH mark.  Defendants offer no other evidence that would create a genuine dispute
4  as to any material fact.[1]

5  The Court holds that as a matter of law, Plaintiff has common law priority in the
6  INTERNMATCH mark and declare Plaintiff the senior user of the mark and Defendants junior
7  users of the mark.

### 2.   Cancellation of the '911 Registration

"In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action."  15 U.S.C. § 1119.  A reviewing court may cancel a registration "where the registered mark resembles the 'mark or trade name previously used in the United States by another and not abandoned.'"  Wine Grp., LLC v. L. & R. Wine Co., No. 2:10-CV-02204-MCE, 2012 WL 3962500, at *15 (E.D. Cal. Sept. 10, 2012) (citing 15 U.S.C. §§ 1052(d)).

Because Plaintiff is the senior user of the INTERNMATCH mark, Defendants do not have a right to registration of the mark.  The Court orders the cancellation of Registration No. 4,641,911.[2]  See 15 U.S.C. § 1119.

### 3.   False Designation of Origin

Section 1125(a) of Title 15 of the United States Code makes a person who uses a false

---

[1] Even if the Court were to consider this particular testimony from Santo, Crooks, and Boyer, Defendants' evidence still would not raise a triable issue of fact as to "use in commerce."  Chance v. Pac-Tel Teletract Inc. is instructive.  See 242 F.3d 1151 (9th Cir. 2001).  There, the plaintiff, seeking subscribers for its lost-and-found tag service, mailed 35,000 postcards but received only 128 responses, and did not make a single sale.  Id. at 1159–60.  The Chance court found that plaintiff's two token sales to his friends, without evidence of payment, did not constitute bona fide first use.  Id. at 1160.  Here, Defendants have only identified Santo, Crooks, and Boyer as users of Nxtbigthing's services, although none could recall with specificity the services they used.  Also, as previously noted (and as Defendants acknowledged at the hearing on this motion), Defendants never generated any revenue from their alleged use of the mark.  This insubstantial showing is not sufficient to constitute use in commerce.

[2] As Defendants fail to show that evidence of use of the mark in commerce, cancellation of the mark on this basis would also be appropriate.

description of the origin of any goods or services put into commerce civilly liable for that conduct. A claim for false designation of origin under section 1125 require proof of the same elements as a claim for trademark infringement. Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp., 174 F.3d 1036, 1046 n.6 (9th Cir. 1999). A plaintiff must prove: "(1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." Rearden LLC v. Rearden Commerce, Inc., 683 F.3d 1190, 1202 (9th Cir. 2012) (internal quoations ommitted).

### a. Protectable Interest in the Mark

Marks are generally classified in one of five categories: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and (5) fanciful. KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc., 408 F.3d 596, 602 (9th Cir. 2005). Generic marks are not eligible for protection. Zobmondo Entm't, LLC v. Falls Media, LLC, 602 F.3d 1108, 1114 (9th Cir. 2010). "A suggestive mark is one for which a consumer must use imagination or any type of multistage reasoning to understand the mark's significance, . . . the mark does not *describe* the product's features, but *suggests* them." Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135, 1142 (9th Cir. 2002).

Plaintiff provides an online system of resources and tools for entry-level job seekers and employers. Plaintiff argues that the INTERNMATCH is suggestive as "it requires multi-stage reasoning to link the INTERNMATCH mark" with the services it offers. ECF No. 122 at 24. The Court agrees that the mark requires thought or perception to link the trademark with the services offered. As Plaintiff further points out, the USPTO also found the mark distinct when it was registered to Nxtbigthing.

Plaintiff has demonstrated that the mark is protectable.

### b. Customer Confusion

Having demonstrated that the mark is protectable, Plaintiff must also demonstrate a likelihood of confusion. Likelihood of confusion may be established by an analysis of eight factors: 1) strength of the mark; 2) the proximity of the goods; 3) the similarity of the marks; 4) evidence of actual confusion; 5) marketing channels used; 6) the type of goods and the degree of

care likely to be exercised by the purchaser; 7) defendant's intent in selecting the mark; and 8) the likelihood of expansion of the product lines. AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348–49 (9th Cir. 1979). However, "the eight-factor test for likelihood of confusion is pliant," as the relative importance of each factor "will be case-specific." Brookfield, 174 F.3d at 1054. Additionally, in the context of the internet, the three most important Sleekcraft factors are (1) similarity of the marks; (2) proximity of the goods or services; and (3) the parties' simultaneous use of the internet as a marketing channel. Interstellar Starship Servs., Ltd. v. Epix, Inc., 304 F.3d 936, 942 (9th Cir. 2002). If the so-called "internet trinity" suggests confusion is likely, the other Sleekcraft favors must weigh strongly against a likelihood of confusion. Id.

***Similarity of the Marks:*** In evaluating the similarity of the marks, a court considers the following "axioms": "(1) similarity is best evaluated by appearance, sound, and meaning; (2) marks should be considered in their entirety and as they appear in the marketplace; and (3) similarities weigh more heavily than differences." Pom Wonderful LLC v. Hubbard, 775 F.3d 1118, 1127–28 (9th Cir. 2014). Both parties use the identical mark INTERNMATCH, to this factor weighs in favor of finding a likelihood of confusion.

***Proximity of Goods:*** The "proximity of the goods" factor concerns the relatedness of goods. "For related goods, the danger presented is that the public will mistakenly assume there is an association between the producers of the related goods, though no such association exists." Sleekcraft, 599 F.2d at 350. This factor favors Plaintiff because Plaintiff and Nxtbigthing offer the same services[3] in the same field – online resources in the field of recruiting and employment

---

[3] InternMatch's USPTO application described the following services: "Employment agency services, namely, providing a website with online video, audio and textual information to support recruiting, employment branding, and general candidate evaluation; recruiting services for filling corporate internship positions; providing an online searchable database featuring employment opportunities and content about employment." ECF No. 125, Maguire Decl., Ex. 8.

Nxtbigthing's USPTO application described the following services: "Online computer services, namely, providing a website that offers the exchange of information in the field of employment opportunities and career placement, recruitment, careers, and job listings, providing an on-line searchable database featuring classified ad listings and employment opportunities, career networking services, providing a web site featuring the ratings, reviews and recommendations on employers and employees and places of employment for use by employees, employers, business owners, and consumers." ECF No. 123, Keyes Decl., Ex. 1.

information.

*Marketing Channels:* "Convergent marketing channels increase the likelihood of confusion." Sleekcraft, 599 F.2d at 353. "In assessing marketing channel convergence, courts consider whether the parties' customer bases overlap and how the parties advertise and market their products." Pom Wonderful LLC v. Hubbard, 775 F.3d 1118, 1130 (9th Cir. 2014). Both parties use websites and online resources to market their employment search services. This factor weighs in favor of finding a likelihood of confusion.

As Plaintiff additionally note, Batterman himself admitted to the likelihood of customer confusion at his deposition. When asked if Batterman had evidence that prospective customers of Defendants were confused by Plaintiff's use of the INTERNMATCH mark, Batterman responded:

> Well, since we're a job search website, I think it's a little difficult to tell. But since InternMatch, Inc.['s] services are nearly identical to ours, again, that would be difficult to tell.

ECF No. 123, Keyes Decl., Ex. 9 Batterman Tr 79:18–80:1. When evaluating InternMatch's trademark application, the USPTO examiner also found a likelihood of confusion given the similarity of the marks, similarity of the services, and similarity in the channels of trade. See ECF No. 123, Keyes Decl., Ex. 4, USPTO Letter dated 4/11/15.

Turning to the other Sleekcraft factors, the Court finds that they, too weigh in favor of a likelihood of confusion.

*Strength of the Mark:* The most distinctive marks—i.e., arbitrary and fanciful marks—receive the most trademark protection, whereas the least distinctive marks—i.e., generic marks—receive no trademark protection. Entrepreneur Media, Inc., 279 F.3d at 1141. Suggestive and descriptive marks lie between these two extremes, with suggestive marks being entitled to greater protection than descriptive marks. Id. Here, the strength of the INTERNMATCH mark further supports a finding of likelihood of confusion. As discussed earlier, the INTERNMATCH mark is conceptually distinctive. Additionally, the mark is commercially strong. Plaintiff has invested significant resources and time to developing the INTERNMATCH brand. See ECF No. 124, Maguire Decl. ¶ 5; see also Groupion, LLC v. Groupon, Inc., 859 F. Supp. 2d 1067, 1078 (N.D. Cal. 2012) ("Commercial strength is based on actual marketplace recognition, and thus advertising

11

1  expenditures can transform a suggestive mark into a strong mark.").

2  Having weighed the appropriate Sleekcraft factors and given due weight to the "internet trinity," the Court finds that Plaintiff has met its burden of establishing that Defendants' use of the INTERNMATCH mark would create a likelihood of confusion. The Court holds that Plaintiff is entitled to summary judgment on its claim for false designation of origin.

### 4. Unfair Competition

California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent usiness act or practice and unfair, deceptive, untrue or misleading advertising . . . ." Cal. Bus. & Prof. Code § 17200. UCL claims are "substantially congruent" and therefore can be analyzed under the federal trademark Lanham Act. See Clearly v. News Corp., 30 F.3d 1255, 1263 (9th Cir. 1994); Walter v. Jeremyel, Inc., 210 F.3d 1108, 1111 (9th Cir. 2000). "A plaintiff who establishes a Lanham Act violation has also established a UCL violation." Haas Automation, Inc. v. Denny, No. 2:12-CV-04779 CBM, 2013 WL 6502876, at *12 (C.D. Cal. Dec. 4, 2013).

The ultimate test under both is "whether the public is likely to be deceived or confused," thus, the Court's holding on Plaintiff's false designation of origin claim under the Lanham Act controls the resolution of the unfair competition claim. Because Plaintiff is entitled to summary judgment on its false designation of origin claim, it follows that Plaintiff is also entitled to summary judgment on its UCL claim. See, e.g., Twentieth Century Fox Film Corp. v. Dastar Corp., No. CV 98-7189 FMC EX, 2000 WL 35503105, at *12 (C.D. Cal. Jan. 4, 2000) (granting summary judgment on plaintiff's UCL claim because the court previously granted summary judgment on plaintiff's false designation of origin claim); Thomas Petroleum, LLC v. Lloyd, No. 11-cv-00902, 2012 WL 4511369, at *21 (E.D. Cal. Oct. 2., 2012) (granting summary judgment on plaintiff's UCL claim because court granted summary judgment on the trademark infringement claim).

## III.  PERMANENT INJUNCTION

### A. Legal Standard

Trademark law gives federal courts the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable . . . ." 15 U.S.C. §

12

1116. A plaintiff seeking a permanent injunction must satisfy a four-factor test by demonstrating:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).  See Herb Reed Enterprises, LLC v. Florida Entm't Mgmt., Inc., 736 F.3d 1239, 1248–50 (9th Cir. 2013) (applying the eBay factors to trademark law).

### B.    Discussion

Plaintiff requests that the Court enjoin Defendants, and their agents, employees, successors, affiliates, and joint venturers and any person(s) in active concert or participation with Defendants from (1) claiming to any third parties that they have superior rights to the INTERNMATCH mark and (2) using the INTERNMATCH mark or any other mark that is likely to cause consumer confusion, deception, or mistake relating to InternMatch's services.  ECF No. 120 at 28.  Defendants offer no argument in opposition to this request.  See ECF No. 135.

The Court concludes that injunctive relief is appropriate, as Plaintiff has satisfied the four-factor test outlined in eBay Inc. v. MercExchange, L.L.C.

As to the first factor, Plaintiff has established it has invested substantial time, effort, and resources into shaping its brand and has developed goodwill in the mark.  Defendants' conduct in issuing take down notices to social media companies – including after the issuance of a Court order forbidding that precise conduce – has impacted Plaintiff's business goodwill and business relationships.  See ECF No. 122 at 29.  If Defendants are not restrained, it is likely that this conduct will recur.

Turning to the second factor, Plaintiff has established that monetary damages alone cannot repair its harm.  See Century 21 Real Estate Corp. v. Sandlin, 846 F,2d 1175, 1180 (9th Cir. 1988) ("Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement.").

Regarding the third factor, the balance of hardships weighs in favor of Plaintiff.  Plaintiff

1    argues, and the Court agrees, that damage to InternMatch's reputation is a greater hardship than

2    restraint on Defendants' unlawful conduct. ECF No. 122 at 29 (citing to Rolex Watch U.S.A., Inc.

3    v. Watch Empire LLC, No. 13-09221, 2015 WL 9690322, at *8 (C.D. Cal. Sept. 29, 2015)).

4          Finally, the public interest will be served by protecting Plaintiff's intellectual property

5    rights and reducing customer confusion. See, e.g., D.light Design, Inc. v. Boxin Solar Co., No.

6    13-CV-05988-EMC, 2015 WL 7731781, at *5 (N.D. Cal. Dec. 1, 2015); Rolex Watch U.S.A.,

7    Inc., 2015 WL 9690322, at *8.

8          As Plaintiff has established that a permanent injunction is appropriate in this case, the

9    Court orders the following terms:

> Defendants (including their officers, agents, servants, employees, attorneys, and others in active concert or participation with them) are hereby enjoined from (1) claiming to any third parties that they have superior rights to the INTERNMATCH mark and (2) using or infringing in any matter the INTERNMATCH mark.

13   This injunction binds only those who receive actual notice of it by personal service or

14   otherwise. Fed. R. Civ. P. 65(d)(2).

15   **IV.   ATTORNEYS' FEES AND COSTS**

16       **A.    Legal Standard**

17         Section 35(a) of the Lanham Act provides that "[t]he court *in exceptional cases* may award

18   reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a) (emphasis added). The

19   Lanham Act does not define what makes a case "exceptional." See Stephen W. Boney, Inc. v.

20   Boney Servs., Inc., 127 F.3d 821, 825-26 (9th Cir. 1997). "Generally, a trademark case is

21   exceptional for purposes of an award of attorney's fees when the infringement is malicious,

22   fraudulent, deliberate, or willful." Id. (quoting Lindy Pen Co., Inc. v. Bic Pen Corp., 982 F.2d

23   1400, 1408 (9th Cir. 1993)). The definition "refers to the nature of the defendant's infringement

24   in a case where the plaintiff prevails." Id. Awarding attorneys' fees under 15 U.S.C. section

25   1117(a) is discretionary. Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc., 778 F.3d 1059,

26   1079 (9th Cir.), cert. denied, 136 S. Ct. 410, 193 L. Ed. 2d 317 (2015) ("[T]he plain language of

27   the statute allows the court to choose whether to award fees, even after finding the case

28   exceptional.").

**B.     Discussion**

Plaintiff requests the Court award InternMatch reasonable attorneys' fees and costs incurred in this litigation for two reasons. ECF No. 122 at 30. First, Plaintiff contends that Defendants knew from the outset of the litigation they had no evidence of use in commerce of the mark and that the evidence of use documents were fraudulent. Id. Second, Defendants' conduct throughout the litigation has been "truly egregious." Id. at 30–31.

Although certain of the Defendants' discovery conduct was in bad faith, the Court has already awarded Plaintiff its attorneys' fees with regard to that conduct. The Court finds that this is not an exceptional case and declines to award additional fees.

## CONCLUSION

The Court grants Plaintiff's motion for partial summary judgment. The Court also grants a permanent injunction as follows:

> **Defendants (including their officers, agents, servants, employees, attorneys, and others in active concert or participation with them) are hereby enjoined from (1) claiming to any third parties that they have superior rights to the INTERNMATCH mark and (2) using or infringing in any matter the INTERNMATCH mark.**

Finally, the Court does not award further attorneys' fees to Plaintiff. Plaintiff, however, may file a bill of costs pursuant to Civil Local Rule 54-1.

All pending deadlines and hearings in this action are vacated. Plaintiff shall submit a proposed form of judgment within seven days of the date of this Order. Defendants will then have seven days from the receipt of the proposed judgment to either approve it as to form or file their objections. Plaintiff may file a response to Defendants' objections, if any, within seven days after Defendants' objections are due.

/ / /

/ / /

/ / /

/ / /

/ / /

In light of the foregoing, Defendants' motion for clarification, ECF No. 157, is denied as moot.

IT IS SO ORDERED.

Dated: July 11, 2016

_____
JON S. TIGAR
United States District Judge